## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

FRANK SCHAMBACH, ET AL.                                    CIVIL ACTION

VERSUS                                                     CASE NO. 20-214

CITY OF MANDEVILLE, ET AL.                                 SECTION: "G"

### ORDER AND REASONS

This Order and Reasons assumes familiarity with prior proceedings in this civil rights wrongful arrest litigation pursued by Frank and Aurora Schambach ("Plaintiffs") against various public entities and officials with the City of Mandeville. On November 3, 2021, the Court granted in relevant part a motion for summary judgment filed by the City of Mandeville and Gerald Sticker, in his official capacity as Chief of Police for the City of Mandeville.[1] The Court revisits the summary judgment record to resolve the present motion, which principally presents the question of whether the remaining defendants, the arresting officers, had arguable probable cause to arrest Plaintiff Frank Schambach.  Presently before the Court is a Motion for Summary Judgment[2] filed by Defendants Detective Karole Muller and Lieutenant Fred Fath, sued in their individual and official capacities as police officers for the City of Mandeville (collectively, "Defendants"). Plaintiffs oppose the motion.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

---

[1] Rec. Doc. 32.

[2] Rec. Doc. 38.

[3] Rec. Doc. 39.

1

## I. Background

Frank Schambach was arrested and charged with molesting his teenage stepdaughter, who later recanted the allegation, prompting the District Attorney to drop the charge months later.[4] This civil rights lawsuit by Mr. Schambach and his wife, Aurora, the girl's mother, followed.[5]

Mr. Schambach is an Iraq War veteran.[6] After he returned from combat, he was in his mid-30s working as a contractor with security clearance for the federal government.[7] He lived with his wife on the Northshore of New Orleans with Mrs. Schambach's daughter, Jane Roe, who presented some disciplinary challenges as a teenager.[8] The Schambachs discovered Jane Roe was "constant[ly] lying," so they installed spyware on Jane Roe's cellphone to read her text messages.[9] When they discovered that Jane Roe had engaged in promiscuous behavior with her boyfriend, the parents threatened to send Jane Roe to California to live with her biological father.[10] Jane Roe's text messages to her boyfriend indicate that the prospect of moving to California (i.e., being away from the boyfriend) gravely concerned her; she texted him on the morning of January 16, 2019 that she planned to "fix this cause I wanna be with you."[11]

---

[4] Rec. Doc. 1 at 5–6.

[5] *Id.*

[6] Rec. Doc. 35 at 3.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] Rec. Doc. 39-2 at 4.

[11] Rec. Doc. 39-10.

Later that day at school on January 16, 2019, Jane Roe reported to her high school counselor that her stepfather had molested her on one occasion some years prior.[12] The high school counselor reported this allegation to the state Department of Children and Family Services.[13] That same day, an employee of the state Department of Children and Family Services visited the Schambachs' house and confronted Mr. Schambach with the child molestation accusation, which he denied.[14] He was told to leave his house.[15] He did so.[16] That same day, Mr. Schambach self-reported to his military unit that he was being investigated for child molestation.[17]

And, so, he was. The next day, on January 17, 2019, the Department of Children and Family Services reported to the Mandeville Police Department that a juvenile had alleged that she had been sexually assaulted.[18] Mandeville Police Department Detective Karole Muller and Lieutenant Fred Fath were tasked with investigating the allegation.[19] During the three-day investigation, Muller and Fath were provided a videotaped interview of Jane Roe, which was conducted by a Children's Advocacy Center forensic counselor, and the officers interviewed several witnesses: Jane Roe, Jane Roe's mother Aurora Schambach, Jane Roe's best friend at the time of the alleged molestation, Department of Children and Family Services employee Ashley Myers, Jane Roe's

---

[12] Rec. Doc. 35 at 3.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] Rec. Doc. 39-2 at 5.

[17] Rec. Doc. 35 at 3.

[18] Rec. Doc. 38-3 at 1.

[19] *Id.*

sister, and Mandeville High School counselor Julie Heiden.[20] The investigation culminated on January 19, 2019, when the officers took a video and audio taped statement of the accused, Frank Schambach, who was *Mirandized* and agreed to be interviewed.[21] The investigating officers memorialized these aspects of their investigation in a written report, which was logged into the Mandeville Police Department records system as Incident 1901-0662.[22] Muller and Fath reported that Jane Roe, Frank Schambach's stepdaughter, had accused him of molesting her on one occasion six years prior.[23]

At the conclusion of Frank Schambach's interview, Muller and Fath concluded the investigation, having determined that there was sufficient probable cause to arrest Frank Schambach for violating La. R.S. § 14:81.2, molestation of a juvenile.[24] Mr. Schambach was arrested, handcuffed, and taken into custody.[25] He was processed at the Mandeville Police Department then transported to the St. Tammany Parish Sheriff's Office, where he was booked.[26]

---

[20] *Id.* at 1–2.

[21] *Id.* at 2. According to Mrs. Schambach, during her police interview, she denied that her husband ever molested her daughter and explained the disciplinary issues they confronted with Jane Roe. Rec. Doc. 39-2 at 3. Although she offered to show the interviewing officer text messages and social media messages that she believed would support her firm belief that her daughter was fabricating the molestation allegation, she says the unidentified officer refused to review the text and social media messages. *Id.* When officers interviewed Mr. Schambach, he denied the allegations, advised of the disciplinary issues, and offered to show the officers the messages from Jane Roe's phone. Rec. Doc. 39-14 at 4–5. Again, the Schambachs say, the unnamed officers refused to review the messages. *Id.*

[22] Rec. Doc. 38-3 at 1.

[23] *Id.*

[24] Rec. Doc. 38-3 at 2. La. R.S. § 14:81.2(A)(1) provides in relevant part:

Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.

[25] Rec. Doc. 38-3 at 2.

[26] *Id.*

The next day, on January 20, 2019, Muller submitted an Affidavit of Probable Cause and applied for a 48-hour arrest warrant for Mr. Schambach for violation of La. R.S. § 14:81.2.[27] Muller summarized under oath the details of the alleged molestation, that the suspect denied the specific allegation, that the victim made consistent disclosures to her close friend at the time, and then later to the counselor and the Department of Children and Family Services.[28] The arrest warrant application was submitted to Commissioner Dan Foil of the 22nd Judicial District, who then reviewed and signed the application and issued the 48-hour arrest warrant: Commissioner Foil ordered, adjudged, and decreed that Frank Schambach had been lawfully arrested upon probable cause, without a warrant.[29] Shortly thereafter, Mr. Schambach's security clearance was revoked, and he was terminated from his job.[30]

A few months later, on April 29, 2019, in a notarized handwritten statement, Jane Roe recanted her accusation of molestation; she wrote: "The accusations made towards Frank and I are not true. I wanted to get out of a situation regarding my family and things have just been taken too far. Some of my friends did encourage me and as said before things got way out of hand."[31] Months

---

[27] *Id.*

[28] Rec. Doc. 38-7 at 1-2. In the Affidavit for Probable Cause of Arrest—Exhibit E in the summary judgment record—Detective Muller attested that: Jane Roe reported that when she was approximately 10 years old, during a massage that she performed on Schambach's legs on his bed and at his direction, Schambach told her to go up higher up on his legs; Jane Roe reported that Schambach routinely put his hand on top of hers; on the occasion at issue, Schambach requested that Jane Roe go higher until she felt something "warm and soft," which she believed to have been Schambach's penis; Jane Roe further reported that she was uncomfortable, and that Schambach opened the front of his shorts and she saw what she thought was his penis; Jane Roe closed her eyes and Schambach stated something to the effect of "this is my lollipop it's okay you can kiss/lick it." Schambach denied the alleged incident, but he admitted that Jane Roe would massage his legs. Schambach stated that he recalled a massage event that made Jane Roe uncomfortable: as he recalled, she was brushing his hair when the brush fell between his legs; he told her to pick it up but then told her to stop. *Id.* Jane Roe disclosed a consistent allegation to a close friend and later to a counselor at school as well as a Department of Children and Family Services investigator. *Id.* Detective Muller thus states "[r]easons for belief are victim's statements, other persons statements, and defendant's statements." *Id.* at 2.

[29] *Id.* at 3.

[30] Rec. Doc. 39-14 at 3-4.

[31] Rec. Doc. 39-12 at 1.

later, on July 15, 2019, the District Attorney for the 22nd Judicial District refused the charge and released the bond.[32] Nevertheless, Mr. Schambach has been unable to regain his security clearance; both Mr. and Mrs. Schambach "have been labeled as child molesters in the State of Louisiana Department of Children and Family Services Stage Central Registry" and the Department purportedly refuses to update the database.[33]

Exactly one year after his arrest, seeking declaratory and injunctive relief along with monetary damages for false arrest and malicious prosecution, Frank and Aurora Schambach sued Gerald Sticker, in his official capacity as the Chief of Police for the City of Mandeville and the City of Mandeville, as well as unidentified parties (John Doe 1 and John Doe 2 as placeholders for the arresting officers), and the Department of Children and Family Services for the State of Louisiana.[34] The Schambachs allege that Jane Roe fabricated the molestation allegation to avoid being disciplined.[35] They claim that the (then-unidentified) arresting officers should have discovered that Jane Roe was lying, that the officers deliberately ignored exculpatory evidence in arresting Mr. Schambach.[36] Plaintiffs seek to recover for violations of their civil rights under 42 U.S.C. § 1983 under the Fourth, Fifth, and Fourteenth Amendments as well as for malicious prosecution under Louisiana law.[37]

---

[32] Rec. Doc. 38-8.

[33] Rec. Doc. 35 at 5. It is alleged that Mr. Schambach is listed in the database for "sexual enticement of" Jane Roe and Mrs. Schambach is listed for "passive sexual abuse" of Jane Roe.  *Id.*

[34] Rec. Doc. 1. The Department of Children and Family Services was later dismissed for lack of jurisdiction based on sovereign immunity.  Rec. Doc. 12.

[35] Rec. Doc. 1 at 7.

[36] *Id.* at 9.

[37] *Id.* at 9–10.

Following the Court's grant of summary judgment in favor of the City and Sticker on November 3, 2021, on November 19, 2021, Plaintiffs filed an amended complaint, finally naming Defendants Karole Muller and Fred Fath, the arresting officers, and re-alleging false arrest and malicious prosecution.[38] Defendants now request summary judgment in their favor dismissing the plaintiffs' federal civil rights claim for false arrest and the state law claim for malicious prosecution.[39] Plaintiffs oppose the motion.[40] With leave of Court, Defendants filed a reply.[41]

## II. Parties' Arguments

### A.      *Defendants' Arguments in Support of the Motion*

Defendants submit that they are entitled to summary judgment because probable cause supported Mr. Schambach's arrest, they are entitled to qualified immunity, and the existence of probable cause defeats Plaintiffs' state law claim for malicious prosecution. First, Defendants contend that Plaintiffs must show that Defendants lacked probable cause to arrest Mr. Schambach and that a later finding of innocence or a suspect's protestation will not defeat an officer's finding of probable cause.[42] Defendants contend that probable cause is a relatively low threshold, and that threshold is met on the summary judgment record here, which includes the incident report, Defendants' affidavits, witness statements, Mr. Schambach's statement, as well as the warrant which issued after the arrest.[43]

---

[38] Rec. Doc. 35.

[39] Rec. Doc. 38.

[40] Rec. Doc. 39.

[41] Rec. Doc. 42.

[42] Rec. Doc. 38-1 at 5.

[43] *Id.* at 6–7.

Second, Defendants contend that Plaintiffs cannot carry their burden to show that Defendants' actions in conducting a lengthy investigation into Jane Roe's molestation allegation violated Mr. Schambach's clearly established rights.[44] Defendants submit that Plaintiffs have no evidence to support their conclusory allegations that Defendants violated their constitutional right to be free from false arrest.[45] Defendants point out that Plaintiffs fail to allege that the arrest warrant that issued was not supported by probable cause.[46]

Third, Defendants contend that a finding of probable cause to support an arrest defeats a malicious prosecution claim arising under Louisiana law.[47] Defendants argue that Plaintiffs' malicious prosecution claim fails as a matter of law considering that Defendants determined they had probable cause to arrest Mr. Schambach and the arrest was also supported by a post-arrest warrant, which Plaintiffs do not challenge.[48] Accordingly, Defendants argue that Plaintiffs' malicious prosecution claim must be dismissed with prejudice.[49] Finally, Defendants invoke Louisiana Revised Statute 9:2798.1(B), which Defendants argue protects them from liability for performing discretionary acts within the scope of their employment duties.[50]

### B.    *Plaintiffs' Opposition to the Motion*

Plaintiffs advance three interrelated arguments in support of their contention that summary judgment must be denied. First, Plaintiffs invoke Louisiana state law cases analyzing whether

---

[44] *Id.* at 10.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 12.

[48] *Id.*

[49] *Id.* at 12–13.

[50] *Id.* at 13.

8

probable cause exited to arrest certain suspects in identity cases (i.e., cases where the identification of the suspect is at issue, where witnesses merely saw a person resembling or bearing similarity to unidentified accused persons) or whether, instead, officers merely had reasonable suspicion, falling short of the requisite probable cause standard to effect an arrest.[51]

Second, Plaintiffs submit that Defendants lacked probable cause to arrest Mr. Schambach and that the arrest warrant was tainted by Defendants' use of misleading information and their deliberate concealment of exculpatory evidence.[52] Plaintiffs argue that Defendants violated the Fourth Amendment by intentionally or recklessly omitting material facts from the warrant application, thereby committing a *Franks v. Delaware* violation.[53] By omitting any reference to evidence contained in Jane Roe's text messages with her boyfriend and by failing to include "any of the content of [Mr. Schambach's] statement that was exculpatory[,]" Defendants made material misrepresentations to the magistrate which did not allow for a neutral finding of probable cause.[54]

Third, Plaintiffs contend that Defendants are not entitled to qualified immunity because no crime had been committed and there was no probable cause.[55] Plaintiffs contend that the right to be free from arrest absent probable cause was clearly established at the time of Mr. Schambach's arrest.[56] Plaintiffs contend that the Court may not determine disputed facts and "[b]ecause there are material facts in dispute," summary judgment must be denied.[57]

---

[51] Rec. Doc. 39 at 2–6.

[52] *Id.* at 8–9.

[53] *Id.* at 10–11.

[54] *Id.* at 11.

[55] *Id.* at 6.

[56] *Id.* at 7–8.

[57] *Id.* at 11.

Finally, Plaintiffs contend that their malicious prosecution claim survives summary judgment because "Defendants must concede that Plaintiffs have established the first, second, third, and sixth elements but would contend that Plaintiffs have failed to allege the fourth and fifth elements."[58] Plaintiffs submit that because the charge against Mr. Schambach was dismissed by the St. Tammany Parish district attorney prior to trial, a presumption of malice and no probable cause arises, which "satisfies Plaintiffs' pleading burden."[59]

## C.    *Defendants' Arguments in Further Support of the Motion*

Defendants respond that Plaintiffs fail to provide any evidence to demonstrate that there was a lack of probable cause for the warrantless arrest of Frank Schambach or to prove that Detective Muller made material omissions or deliberately concealed exculpatory evidence in obtaining the arrest warrant.[60]

First, Defendants contend that Plaintiffs erroneously rely upon Louisiana state case law to support their argument that probable cause was lacking in this case.[61]  This reliance is misplaced, Defendants contend, because those cases concerned complex issues presented by insufficient witness identifications.[62]  Here, Defendants contend, there are no material facts genuinely in dispute.[63]  Once probable cause was established through witness interviews as well as Mr. Schambach's statement, police officers were not required to exhaust all available avenues of

---

[58] *Id.*

[59] *Id.* at 12.

[60] Rec. Doc. 42.

[61] *Id.* at 2.

[62] *Id.*

[63] *Id.* at 3.

investigation to ferret out evidence that might exculpate the suspect.[64] Addressing Plaintiffs' argument that Defendants did not consider Jane Roe's text messages and failed to mention them in the arrest warrant application, Defendants contend that Plaintiffs' arguments remain speculative considering they have not authenticated the text messages, nor have they offered proof as to the meaning or context of the messages, and they attach only some eight pages out of alleged 1,300 pages of texts.[65] The eight pages of text messages do not prove that probable cause was lacking; rather, Defendants contend that the texts corroborate and establish that Jane Roe was scared of her stepfather and planned on divulging her secret at school the next day, which is what happened.[66]

Defendants take issue with Plaintiffs' attempt to advance a *Franks* claim for the first time in their opposition papers.[67] Defendants submit that Plaintiffs offer no evidence to prove a *Franks* claim, arguing that there was legal probable cause at the time of the warrantless arrest, the warrant was supported by probable cause, and the district attorney's subsequent refusal to charge is irrelevant to the probable cause determination.[68] Again, Defendants contend that Plaintiffs erroneously speculate that if the text messages had been mentioned in the warrant application, then somehow the affidavit would establish that there was no probable cause to arrest Frank Schambach.[69] Plaintiffs fail to explain how this is so, Defendants contend, and Plaintiffs offer no evidence to refute Defendants' affidavits, no evidence to refute the results of the investigation, no evidence that probable cause was not established by the information learned by Defendants, and

---

[64] *Id.*

[65] *Id.*

[66] *Id.* at 3–4.

[67] *Id.* at 4.

[68] *Id.* at 4–5.

[69] *Id.* at 7–8.

no evidence that Defendants intentionally excluded exculpatory facts in the application for the arrest warrant.[70]

Defendants submit that they are indisputably entitled to qualified immunity, considering that Schambach was arrested after a lengthy investigation into the molestation allegation lodged by his stepdaughter; Plaintiffs have produced no competent summary judgment evidence that Defendants' conduct during the investigation or in arresting Mr. Schambach were objectively unreasonable under the circumstances known to them at the time; and Plaintiffs have produced no evidence that Defendants disregarded exculpatory facts.[71] Because the record shows that Defendants acted reasonably under the circumstances and with probable cause, Defendants contend that they are entitled to the protections of qualified immunity and dismissal of Plaintiffs' claims.[72]

Finally, Plaintiffs' claim for malicious prosecution fails as a matter of law because the summary judgment record establishes legal probable cause for the arrest of Frank Schambach for the molestation of Jane Roe.[73] Defendants also invoke the protections of La. R.S. 9:2798.1, which Defendants contend entitles them to immunity from liability.[74]

### III. Procedural Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[70] *Id.* at 8.

[71] *Id.* at 9.

[72] *Id.*

[73] *Id.*

[74] *Id.*

a matter of law."[75] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[76] All reasonable inferences are drawn in favor of the nonmoving party.[77] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[78] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[79] The nonmoving party may not rest upon the pleadings.[80] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[81]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[82] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the

---

[75] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[76] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[77] *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[78] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[79] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[80] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[81] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[82] *Celotex*, 477 U.S. at 323.

opponent's claim or defense."[83] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[84] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[85]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[86] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[87]

Though the summary judgment record evidence continues to be viewed in the light most favorable to the non-movants, the ordinary summary judgment burden of proof is altered when a defendant invokes qualified immunity.[88]

> A qualified immunity defense alters the usual summary judgment burden of proof. Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once it is properly raised. The plaintiff has the burden to point out clearly established law. The plaintiff also bears the burden of raising a fact issue as to its violation.   Thus, once the defense is invoked, the plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct according to that law.

> At the summary judgment stage, however, all inferences are still drawn in the plaintiff's favor. This is true even when a court decides only the clearly-established

---

[83] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[84] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[85] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[86] *Little*, 37 F.3d at 1075 (internal citations omitted).

[87] *Morris*, 144 F.3d at 380.

[88] *Kokesh v. Curlee*, 14 F.4th 382, 392 (5th Cir. 2021).

prong of the qualified immunity standard. Likewise, under either qualified immunity prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. Accordingly, courts must take care not to define a case's context in a manner that imports genuinely disputed factual propositions.[89]

## IV. Substantive Legal Standards

### A.    *42 U.S.C. § 1983*

Title 42, United States Code, Section 1983, which was enacted pursuant to Congress's authority to enforce the Fourteenth Amendment, creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . .  subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[90] Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[91] To establish § 1983 liability, the plaintiff must satisfy three elements:

(1)    deprivation of a right secured by the U.S. Constitution or federal law,
(2)    that occurred under color of state law, and
(3)    was caused by a state actor.[92]

---

[89] *Id.* (cleaned up).

[90] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[91] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[92] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

**B.      *Qualified Immunity***

"Qualified immunity shields public officials 'sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[93] "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[94] Once invoked, the plaintiff has the burden of negating the defense of qualified immunity.[95]

Resolving immunity defenses calls for application of a bifurcated test. To negate qualified immunity, the plaintiffs must demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[96]  The Court may consider these prongs in either sequence; it need not consider both.[97] Plaintiffs may rebut the qualified immunity defense "by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."[98]

What does it mean for a right to be clearly established?[99] "The second prong of the qualified immunity test," the Fifth Circuit has observed, "is better understood as two separate inquires:

---

[93] *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021)(citations omitted).

[94] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'").

[95] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

[96] *Craig v. Martin*, 26 F.4th 699, 704 (5th Cir. 2022)(citations omitted).

[97] *See Pearson*, 555 U.S. at 232-36.

[98] *See Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017)(citation omitted).

[99] This thorny second prong has instigated scholarly criticism and debate and its misapplication has precipitated many summary reversals by the Supreme Court. *See, e.g., Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019)(citing cases and cautioning in an excessive force case that "we must think twice before denying qualified

16

whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law."[100] "[L]aw is clearly established," the Fifth Circuit has observed, "if it puts an objectively reasonable official on fair warning that his conduct is unlawful."[101] This is a "demanding standard," which requires "precedent [so] clear...that *every* reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."[102] "Clearly established" law is "settled law" that "place[s] the constitutionality of the officer's conduct 'beyond debate.'"[103] Although the Supreme Court does not require "a case directly on point," the legal principle must be specific, not general, and either "controlling authority" has adopted the rule, or there is "a robust consensus of cases of persuasive authority" embracing it.[104] Stated another way, "[a] [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he [or she] is doing violates that right.'"[105] This demanding second prong thus ensures that "government officials [have] breathing room to

---

immunity"; noting that, although "[t]he Supreme Court reserves 'the extraordinary remedy of summary reversal' for decisions that are 'manifestly incorrect[,]'" the Supreme Court "routinely wields this remedy against denials of qualified immunity."); *Cole v. Carson*, 935 F.3d 444, 472, 473-74 (5th Cir. 2019)(*en banc*)(holding that it was clearly established in 2010 that officers' use of deadly force without warning where officers were not in immediate danger violated Fourth Amendment, but fact issues persisted as to whether officers had time to give the plaintiff warning to disarm before shooting him)(Willett, J., dissenting; Ho, J., dissenting)(citations omitted), *cert. denied sub nom.*, *Hunter v. Cole,* --- U.S. ---, 141 S. Ct. 111 (2020).

[100] *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998)(citations omitted, emphasis in original).

[101] *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 n.2 (5th Cir. 2014)(citation omitted).

[102] *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)(citations omitted, emphasis added).

[103] *Id.* (citation omitted).

[104] *Id.* at 589-90 (citation omitted).

[105] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

make reasonable but mistaken judgments about open legal questions."[106]  Indeed, "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[107]

Whereas Defendants invoke qualified immunity, anchored to two theories, Plaintiffs allege violations of Mr. Schambach's Fourth Amendment rights: the right to be free from a warrantless arrest effected without probable cause and the right to be free from arrest warrants that lack probable cause due to knowing or reckless material omissions.  The Court summarizes the substantive legal standards applicable to each theory in turn.

C.      *Probable Cause*

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and further provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[108]  This encompasses the right to be free from an unlawful arrest.  This case, in theory, tests the contours of this right in the context of a minor's claim that her stepfather molested her, which led to his arrest, though the charge was later dismissed after she recanted her allegation.

---

[106] *Id.* at 743.

[107] *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)(quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

[108] U.S. CONST. amend. IV.

Arrests are "'seizures' of 'persons,'" and, thus, "they must be reasonable under the circumstances."[109] Assessing Fourth Amendment violations for reasonableness is a fact-intensive inquiry. Probable cause is no exception, as the Supreme Court has instructed:

> To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Because probable cause "deals with probabilities and depends on the totality of the circumstances," it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules." It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Probable cause "is not a high bar."[110]

"A practical, nontechnical probability that [the arrestee committed a crime] is all that is required."[111] It need be based on "only the kind of fair probability on which reasonable and prudent people, not legal technicians, act."[112]

"Probable cause exists when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'"[113] Law enforcement officers "may rely on the totality of facts available to them in establishing probable cause, [but] they ... may not disregard facts tending to dissipate probable cause."[114] To reiterate, probable cause is a relatively low threshold: "something more than bare suspicion, but need not reach the fifty percent mark."[115] "Whether probable cause exists depends

---

[109] *Wesby*, 138 S. Ct. at 585-86.

[110] *Id.* (internal citations omitted).

[111] *Texas v. Brown*, 460 U.S. 730, 742 (1983).

[112] *Kaley*, 571 U.S. at 338.

[113] *Villarreal v. City of Laredo, Tex.*, 17 F.4th 532, 543 (5th Cir. 2021) (quoting *Texas v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017)).

[114] *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1217 (5th Cir. 1988)).

[115] *United States v. Williams*, 836 Fed. App'x 310, 312 (5th Cir. 2021) (citation omitted).

upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."[116] Notably, "evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"[117]

Here, Mr. Schambach was arrested before a warrant issued, following an investigation conducted after his stepdaughter, Jane Roe, complained of a molestation incident. To reiterate, "[a] warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[118] "The constitutional claim of false arrest requires a showing of no probable cause."[119] Thus, conversely, if the arresting officers had probable cause to arrest an accused for any charge, then the false arrest claim fails.  Even if the officers' conclusion as to probable cause was mistaken, they are still entitled to qualified immunity so long as the conclusion was reasonable.[120]

**D.      _Franks_ Liability**

In addition to disputing whether the arresting officers had probable cause to effect a warrantless arrest, for the first time in their opposition papers, the plaintiffs _additionally_ appear to anchor their false arrest theory to an alleged _Franks_ defect in the affidavit supporting the post-

---

[116] _Devenpeck v. Alford_, 543 U.S. 146, 152 (2004)(citing _Maryland v. Pringle_, 540 U.S. 366, 371 (2003)).

[117] _Deville v. Marcantel_, 567 F.3d 156, 165 (5th Cir. 2009)(quoting _Illinois v. Gates_, 462 U.S. 213, 244 n.13 (1983)).

[118] _Prim v. Stein_, 6 F.4th 584, 593 (5th Cir. 2021) (quoting _Resendiz v. Miller_, 203 F.3d 902, 903 (5th Cir. 2000)).

[119] _Club Retro, L.L.C. v. Hilton_, 568 F.3d 181, 204 (5th Cir. 2009).

[120] _Tarver v. City of Edna_, 410 F.3d 745, 750 (5th Cir. 2005).

arrest warrant, though they do so in conclusory fashion. It is undisputed that Mr. Schambach was arrested without a warrant, then the arresting officer applied under oath for a warrant, which issued. Accordingly, the Court summarizes the substantive legal doctrines applicable to Plaintiffs' defective warrant theory of recovery.

Under the independent intermediary doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."[121] Notably, arresting officers "are shielded from liability by the independent intermediary doctrine . . . even if the warrant application was sought and granted after the arrest took place."[122] That shield is not absolute, however, for "officers who deliberately or recklessly provide false, material information for use in an affidavit or who make knowing and intentional omissions that result in a warrant being issued without probable cause may still be held liable."[123] This so-called *Franks* defect as a source for officer liability is "[f]unctionally ... an exception to the independent intermediary doctrine" and might arise from either material misstatements or material omissions in warrant affidavits.[124] Put differently, under the so-called "taint" exception to the independent-intermediary doctrine, "arrest warrants do not insulate arresting officers from false-arrest liability if their own false and misleading affidavits tainted the magistrate's deliberations."[125]

---

[121] *Mayfield v. Currie*, 976 F.3d 482, 486 (5th Cir. 2020).

[122] *Buehler v. Dear*, 27 F.4th 969, 990 (5th Cir. 2022) (citing *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016) (noting that independent intermediary doctrine applies even if the warrant application was granted after the arrest and even if the arrestee was not convicted of any crime)).

[123] *Mayfield*, 976 F.3d at 487.

[124] *See Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (citing *Franks v. Delaware*, 438 U.S. 154 (1978), which held that intentional or reckless false statements in an affidavit supporting a search warrant resulted in a warrant lacking probable cause); *Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (*en banc*) (although *Franks* arose in search warrant context, its rationale extends to arrest warrant context).

[125] *Buehler*, 2 F.4th at 991 (quotation, citations omitted).

"*Franks* ... requires more than bare assertions of falsehood."[126] "[T]o overcome the 'presumption of validity with respect to the affidavit supporting the ... warrant[, the] plaintiff must demonstrate that ... the affidavit was deliberately or recklessly false."[127] No small feat, a *Franks* showing "must be accompanied by an offer of proof ... [and] point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons[; indeed,] sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."[128] "[I]t has been clearly established [since *Franks v. Delaware*] that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'"[129] "To determine whether the allegedly false statement [or material omission] was necessary [to the finding of probable cause], *Franks* [mandates that courts] consider the faulty affidavit as if those errors and omissions were removed[,] then examine the 'corrected affidavit' and determine whether probable cause for the issuance of the warrant survives the deleted false statements and material omissions."[130] To be sure, "negligence alone will not defeat qualified immunity[; rather a] proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product 'of deliberate falsehood or of reckless disregard for the truth.'"[131]

---

[126] *Terwilliger*, 4 F.4th at 283.

[127] *Id.*

[128] *Id.* (quoting *Franks*, 438 U.S. at 171).

[129] *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018)(citing *Franks*, 438 U.S. at 155-56).

[130] *Id.* at 494-95.

[131] *Id.* (citations omitted).

To prove recklessness, it must be established "that the defendant 'in fact entertained serious doubts as to the truth' of the statement."[132]

## V. Analysis

Mindful of the foregoing legal standards applicable to the alleged Fourth Amendment violations, the Court turns to apply these standards in the context of the arresting officers' invocation of qualified immunity. First, the Court considers whether the arresting officers had arguable probable cause to arrest Mr. Schambach after their investigation, but before securing an arrest warrant.  Second, the Court considers whether the warrant affidavit, reconstructed to include the allegedly omitted material facts (that is, free of the alleged taint), sufficed to establish probable cause to support the arrest warrant.

### A.    *Whether the Arresting Officers had Arguable Probable Cause to Arrest Mr. Schambach After Their Investigation, but Before Securing an Arrest Warrant*

Plaintiffs contend that the arresting officers violated Mr. Schambach's rights under the Fourth Amendment by arresting him without probable cause. The right to be free from arrest without probable cause is a clearly established constitutional right. Where, as here, police officers have invoked qualified immunity, then, the issue presented in considering the first prong of the qualified-immunity analysis is whether the arresting officers had probable cause to arrest; or, if the Court elects to consider the second prong, the issue is whether the arresting officers' conduct was reasonable in light of the clearly established law at the time of the incident (i.e., whether the arresting officers had objective or arguable probable cause in arresting Mr. Schambach).

Mindful that "[q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

---

[132] *Id.* (cleaned up).

rights of which a reasonable person would have known[,]'"[133] if an arresting officer sued in his individual capacity invokes qualified immunity, he has "ample room for mistaken judgments," for qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[134] Thus, "an officer [sued in his individual capacity] who asserts qualified immunity will not be liable for an arrest if he 'reasonably but mistakenly conclude[d] that probable cause was present.'"[135]

Simply put, when an arresting officer advances a qualified immunity defense to a wrongful arrest claim, the Court examines the totality of the circumstances to determine whether the arresting officer had "arguable probable cause" at the time of the arrest.[136] To defeat qualified immunity in the false arrest context, the plaintiff must show that "defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrest."[137] Plaintiffs fail to do so here.

Louisiana Revised Statute § 14:81.2 provides, in relevant part, that "molestation of a juvenile is the commission by anyone over [age 17] of any lewd or lascivious act upon the person or in the presence of a child under [age 17], with the intention of arousing or gratifying the sexual desires of either person, by the use of force . . . or by the use of influence by virtue of a position of control or supervision over the juvenile."

---

[133] *See Kokesh*, 14 F.4th at 391.

[134] *See Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

[135] *Sam v. Richard*, 887 F.3d 710, 715 (5th Cir. 2018) (quoting *Wesby*, 138 S. Ct. at 591).

[136] *See Mendenhall*, 213 F.3d at 231 (citing *Illinois v. Gates*, 462 U.S. 213, 241 (1983)); *see also Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (footnote, citations omitted)( In the false arrest context, "[a] plaintiff must clear a significant hurdle to defeat qualified immunity[:] 'there must not even 'arguably' be probable cause for the search and arrest for immunity to be lost.'"); *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) ("[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.").

[137] *Club Retro, L.L.C.*, at 207 (citations omitted).

Defendants submit that they are entitled to qualified immunity because they conducted a reasonable investigation into Jane Roe's allegation that, on one occasion years ago when she was 10 years old, her stepfather, Frank Schambach, had encouraged her to touch (and had shown her) his penis and—based on the three-day police investigation—they reasonably concluded that probable cause supported Schambach's arrest for molestation under the statute.  Plaintiffs counter that probable cause was lacking because Defendants willfully disregarded what Plaintiffs characterize as exculpatory evidence, namely, that Jane Roe's credibility was undermined due to her motivation to fabricate the molestation allegation to avoid, or in retaliation for, threatened discipline.  This motive to fabricate, Plaintiffs contend, was implicit in more than one thousand pages of text messages; of those, only about eight pages are filed into the summary judgment record.

On this record, Plaintiffs fail to defeat the arresting officers' invocation of qualified immunity. The summary judgment record demonstrates that a reasonable police officer could believe that Jane Roe's account of the alleged incident, as she recounted to a high school counselor, state agent, a friend at the time, and the investigating officers, even though denied by the accused, was sufficient to support probable cause to arrest Mr. Schambach for molestation under the state statute. In other words, the record demonstrates that Defendants had arguable probable cause to arrest Mr. Schambach for molestation of a juvenile. The arresting officers' investigation included consideration of a videotaped interview of Jane Roe, which was conducted by a Children's Advocacy Center forensic counselor, as well as the officers' interviews of several witnesses, including Jane Roe, Jane Roe's mother Aurora Schambach, Jane Roe's best friend at the time of the alleged molestation, Department of Children and Family Services employee Ashley Myers, Jane Roe's sister, Mandeville High School counselor Julie Heiden, and Frank Schambach. The

arresting officers memorialized the facts and allegations in an Incident Report, Defendant Muller submitted an affidavit under oath in support of an application for an arrest warrant, and Defendants have filed affidavits into the summary judgment record. For their part, Plaintiffs submit their answers to interrogatories, Jane Roe's handwritten recantation, the district attorney's letter refusing the molestation charge, as well as eight pages of screenshots purportedly of text messages between Jane Roe and her boyfriend. Considering the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have failed to rebut the qualified immunity defense; Plaintiffs fail to show that Defendants lacked arguable (reasonable but mistaken) probable cause for Mr. Schambach's arrest for molestation of a juvenile.

Critically, reports of sexual assault, standing alone, may constitute sufficient probable cause to effect an arrest of the individual accused.[138] In *Travis v. City of Grand Prairie, Texas*, arrestee-plaintiff Thomas Travis had reported to a state welfare agency that Rita Sandoval committed welfare fraud and perjury, and he reported to child protective services that Sandoval had sexually assaulted a minor child.[139] Two days later, Sandoval reported to the county sheriff that Travis had sexually assaulted her; after speaking with Travis, the sheriff's department determined that Sandoval's allegations were unfounded, that her allegations were made in retaliation for his report against her.[140] The next day, Sandoval reported the same sexual assault allegations against Travis to the Grand Prairie Police Department, where the assigned detective ignored Travis's assertions of innocence and allegedly ignored the sheriff's department's

---

[138] *See, e.g.*, *Travis v. City of Grand Prairie, Texas*, 654 Fed. App'x 161 (5th Cir. 2016)(unpublished)(citations omitted).

[139] *Id.* at 162.

[140] *Id.*

communication that Sandoval's allegations were false and retaliatory; so, Travis was arrested.[141] In his civil rights lawsuit, Travis alleged that the arresting officers lacked probable cause to arrest him because the detective had direct "exculpatory" evidence proving Travis's innocence.[142]  Even assuming Travis's allegations were true, the district court determined, and the Fifth Circuit agreed, that Travis failed to show that the officers lacked probable cause to arrest him, given that Castaldo's report alone was sufficient to give the officers probable cause for his arrest.[143]

It is settled that probable cause generally exists to arrest a suspect named by an alleged victim of assault.[144] Plaintiffs fail to contend with this authority. To undermine the arresting officers' determination of probable cause when an accuser reports an assault, an accused must do more than question the accuser's credibility and motives; he must point to evidence that would show her account to be demonstrably false.[145] Here, Plaintiffs fall short of identifying any such evidence.[146] Plaintiffs essentially challenge the sufficiency of the investigation.[147] Had the arresting officers accepted Plaintiffs' insistence that Jane Roe was lying to avoid being disciplined and had they read her text messages exchanged with her boyfriend (presumably, especially the one in which Jane Roe tells her boyfriend she will "fix this"), Plaintiffs argument goes, the officers

---

[141] *Id.* at 162–63.

[142] *Id.*

[143] *Id.* at 165.

[144] *See id.* (citing cases); *see also*, *e.g.*, *Walz v. Randall*, 2 F.4th 1091 (8th Cir. 2021); *Ahlers v. Schebil*, 188 F.3d 365 (3d Cir. 1999); *Tangwall v. Stuckey*, 135 F.3d 510 (7th Cir. 1998).

[145] *See Travis*, 654 Fed. App'x at 165.

[146] That Jane Roe later recanted her allegation is of no moment to the probable cause determination.

[147] The Schambachs submit in conclusory fashion that the arresting officers disregarded exculpatory evidence (i.e., that Jane Roe fabricated the molestation allegation to avoid being disciplined or in retaliation for the threatened disciplinary action). Notably, however, the Court examines evidence under an objective standard—in the arresting officers' narrative in the incident report, it is reported that Mr. Schambach claimed that Jane Roe had reasons to fabricate the molestation allegation. So this retaliatory motive was part of the probable cause calculus.

would have discovered that Jane Roe's credibility was questionable. But even assuming that the arresting officers had some reason to question Jane Roe's account (as she reported to the arresting officers after she had so reported to several others), it does not establish that they were unreasonable in their determination that they had probable cause to arrest Mr. Schambach for molestation. To be sure, it is not uncommon for police officers to vet differing accounts of events and nonetheless determine that evidence supports a finding of probable cause that a crime has been committed.  This is particularly true in the context of sexual assault of molestation claims, where "only two people were in the bedroom where the alleged [molestation] occurred[.]"[148]

Notably, here, the arresting officers were well aware that Mr. Schambach denied Jane Roe's allegation.  Mr. Schambach denied the allegation during his interview, which was the last piece in the arresting officers' investigation puzzle. That Mr. Schambach offered an ostensibly innocuous account of prior massages by his stepdaughter or a prior hair-brushing event culminating in (as Mr. Schambach allegedly told it) an upset Jane Roe running from the room, and that he suggested that Jane Roe was motivated to lie "do not have any automatic, probable-cause-vitiating effect."[149]  That Jane Roe's credibility could be called into question or that she had a motivation to fabricate a molestation allegation likewise does not vitiate Defendants' arguable probable cause determination.

Where, as here, Defendants invoke qualified immunity, Plaintiffs bear the burden to demonstrate that it was unreasonable for the arresting officers to believe that Jane Roe was telling the truth in her accusation that her stepfather had molested her and that it was unreasonable for

---

[148] *See Walz*, 2 F.4th at 1103-04 (observing that "this case is not one in which 'minimal further investigation would have exonerated the suspect'" and "'[w]hen an officer is faced with conflicting information that cannot be immediately resolved, he may have arguable probable cause to arrest a suspect' even without additional investigation.").

[149] *See Wesby*, 138 S.Ct. at 592.

them to conclude that they had probable cause to arrest Mr. Schambach for molesting her. Considering the evidence in the light most favorable to Plaintiffs, they fail to carry their burden. The arresting officers were faced with conflicting accounts that could not be immediately reconciled or resolved. The record supports Defendants' submission that they (Muller and Fath) had arguable probable cause to effect a warrantless arrest of Mr. Schambach for molestation of a juvenile. Indeed, the Court underscores that probable cause is a relatively low threshold, depends on the totality of the circumstances, and does not demand an actual showing of criminal activity, only a fair probability or substantial chance of criminal activity. Jane Roe's account of the alleged molestation event, if true, fit the state statutory charge of molestation of a juvenile. Plaintiffs have not demonstrated that the arresting officers acted unreasonably in determining that they had probable cause when they credited her account after speaking with relevant parties (including the alleged victim, the accused, and others) during their investigation. Thus, Defendants are entitled to qualified immunity for Plaintiffs' Fourth Amendment warrantless false arrest claim.

**B.     *Whether the Warrant Affidavit, Reconstructed to Include the Allegedly Omitted Material Facts Sufficed to Establish Probable Cause to Support the Arrest Warrant***

Even though raised for the first time in their opposition papers, the Court assumes that Plaintiffs have sufficiently briefed their allegation that the arresting officers violated Mr. Schambach's Fourth Amendment right as recognized by *Franks*—to be free from arrest pursuant to a warrant that lacks probable cause due to knowing or reckless misstatements or omissions by the officer in the warrant application. However, the Court underscores that "mere allegations of 'taint,' without more, are insufficient to overcome summary judgment" and "omissions of

exculpatory information must be 'knowing.'"[150] Nevertheless, to reiterate, to prove such a claim, Plaintiffs must show that:

> (1) the affidavit supporting a warrant contained false statements or material omissions;
> (2) the affiant made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and
> (3) the false statements or material omissions were necessary to the finding of probable cause.[151]

To determine (3), the Court considers whether the affidavit, reconstructed to include the allegedly material omissions, is insufficient to establish probable cause.[152]

Focusing on the first prong of the qualified immunity analysis, the Court focuses on Defendant Muller's conduct in swearing out the affidavit supporting the warrant in considering whether the Fourth Amendment was violated. The Schambachs fail to show a triable issue whether the magistrate's finding of probable cause was tainted by material omissions made by Detective Muller, the arresting officer.

Though "*Franks* ... requires more than bare assertions of falsehood[,]"[153] Plaintiffs fail to heed the Fifth Circuit's clear instructions: "[T]o overcome the 'presumption of validity with respect to the affidavit supporting the ... warrant[, the] plaintiff must demonstrate that ... the affidavit was deliberately or recklessly false."[154] Plaintiffs fail to submit the requisite "offer of proof" and fail to articulate with any precision what facts were recklessly omitted from the

---

[150] *Buehler I*, 824 F.3d at 555 (citations omitted).

[151] *See Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021)(citations omitted).

[152] *Id.*

[153] *Terwilliger*, 4 F.4th at 283.

[154] *Id.*

affidavit.[155] Nor do Plaintiffs submit a statement of supporting reasons or offer reliable witness statements.[156] Instead, Plaintiffs anchor their *Franks* theory of liability to Muller's failure to advise the reviewing commissioner that Mr. and Mrs. Schambach believed that Jane Roe had credibility issues, namely, that she was motivated to fabricate the molestation allegation in order to avoid being disciplined or sent to live with her father in California. Plaintiffs also suggest that they have more than one thousand pages of screenshots of Jane Roe's text messages which they conclude are exculpatory; however, the Court may only consider what is of record: eight pages of unauthenticated text messages purportedly between Jane Roe and her boyfriend in which she purportedly[157] tells him she will "fix this."

Assuming Plaintiffs' submission suffices for an offer of proof, Muller's affidavit would be reconstructed to include the following facts, which Plaintiffs characterize as exculpatory:

- Jane Roe was acting out and facing discipline in the form of being sent away to California;

- Jane Roe texted her boyfriend that she was going to "fix this";

- Mr. and Mrs. Schambach believed that Jane Roe fabricated the allegation to avoid being disciplined or in retaliation for the parents threatening to send her to live in California.

In other words, Plaintiffs insist that injecting an express credibility concern into the affidavit would undermine the other facts (including the victim's allegation, that the victim disclosed consistent statements to three others, that the accused could not recall specifics of the many massages he received from Jane Roe, but that he did recall a brush incident that upset Jane Roe, and that the suspect "denied everything else") as reported to and by Muller in the affidavit. So reconstructed,

---

[155] *See id.*

[156] *Id.* (quoting *Franks*, 438 U.S. at 171).

[157] The text messages are unauthenticated.

the Court must determine whether the reconstructed affidavit would still support a finding of probable cause.

Viewing the facts and reconstructed affidavit in the light most favorable to Plaintiffs, Plaintiffs fail to persuade the Court that the reconstructed affidavit would not support a finding of probable cause. Had the affidavit conveyed the Schambachs' shared belief that Jane Roe was lying to avoid (or in retaliation for) disciplinary action and their shared belief that her text message that she would "fix this" meant that she planned to do something to prevent her parents from sending her to California, viewed in the context of the other unchallenged information contained in the warrant application, does not compel a finding that the affidavit would no longer serve as a predicate for probable cause. In other words, Plaintiffs overstate the exculpatory nature of the omitted facts which they insist support their belief that Jane Roe fabricated the molestation allegation. True, assessing credibility and resolving inconsistencies bear on the probable cause assessment. It does not follow, however, that expounding upon the accused's belief as to the alleged victim's credibility or motivation is necessary to the finding of probable cause. Had Muller conveyed in the warrant application that the Schambachs' believed that Jane Roe was motivated to fabricate the alleged incident, Plaintiffs fail to demonstrate how this would have a probable-cause-vitiating effect. This is especially so considering that the alleged omissions are not intrinsically exonerating facts. Rather, Muller was faced with conflicting accounts that could not be immediately reconciled or resolved. This was conveyed, though not as extensively as the Schambachs insist was necessary, in the affidavit for the warrant.  Muller included in the affidavit supporting the warrant application that "suspect denied everything else" which alluded to the credibility decision the arresting officer had made in applying for the arrest warrant. The reconstructed affidavit merely elucidates the inconsistent accounts presented to the arresting

officers.  In the sort of he-said/she-said context of the allegation and charge here, Plaintiffs fail to show how expounding upon credibility decisions could vitiate probable cause.[158]

On this record, Plaintiffs have failed to show that Muller recklessly omitted exculpatory information that would have precluded the magistrate from viewing all facts material to a finding of probable cause. Even including the facts that serve to underscore Jane Roe's motive for either fabricating or maliciously timing the molestation allegation, considering the totality of the facts set forth in the affidavit—free of the alleged taint—the reconstructed affidavit is sufficient to support the commissioner's probable cause finding. Accordingly, the arresting officers are entitled to summary judgment dismissing Plaintiffs' *Franks* Fourth Amendment false arrest theory, as there was no constitutional violation. Finally, the Court observes that even if Plaintiffs persuaded the Court that the arrest warrant was tainted by Muller's failure to precisely set forth Jane Roe's credibility issues as detailed by the Schambachs, the Court would simply be tasked with determining whether Schambach's arrest for molestation of a juvenile was supported by probable cause.[159] The Court has already indicated that Mr. Schambach's arrest for molestation of his teenage stepdaughter was supported by arguable probable cause. Considering the cases which uphold the grant of qualified immunity when officers credit an alleged victim's story in the face of inconsistent accounts of assault, it would not be a stretch to conclude that the arresting officers are entitled to qualified immunity on the facts of record here.[160] On this record, Plaintiffs fail to make out a constitutional violation.

---

[158] *Cf. Hawkins v. Gage Cnty.*, 79 F.3d 951, 957 (8th Cir. 2014) ("False accusations of sexual assault create a difficult situation for police. Just as the officers were required to respect [the suspect's] rights, they also were expected to address [the alleged victim's] allegations[.]").

[159] *See Buehler*, 2 F.4th at 992.

[160] *See supra* at pp. 21–23.

**C.      *Whether Defendants are Entitled to Summary Judgment on the State Law Claim***

Plaintiffs' sole remaining claim is a Louisiana state law claim for malicious prosecution. The cause of action is inadequately briefed, and the Court is tempted to decline to exercise subject matter jurisdiction over this remaining claim and dismiss the cause of action without prejudice. Nevertheless, because the Court thoroughly has considered the probable cause issue relevant to this state law tort, the Court elects to resolve Defendants' motion for summary judgment.

To succeed on a claim for malicious prosecution under Louisiana law, a plaintiff must prove by a preponderance of the evidence these essential elements:

(1)      the commencement or continuance of an original criminal or civil proceeding;
(2)      its legal causation by the present defendant in the original proceeding;
(3)      its bona fide termination in favor of the present plaintiff;
(4)      the absence of probable cause for such proceeding;
(5)      the presence of malice therein; and
(6)      damages conforming to legal standards resulting to plaintiff.[161]

The plaintiff bears the burden of proof on all elements, except where the prosecuting officer has dismissed the charges.  In that instance, there is a presumption of malice and a lack of probable cause in cases where the prosecuting officer has dismissed the charges.[162] Here, the Court finds that the record demonstrates that the arresting officers had probable cause to charge Mr. Schambach with molestation. This dooms the malicious prosecution claim.[163] Independently, the Court observes that the defendants submit sworn affidavits attesting to their reasonable belief in their probable cause determination, whereas Plaintiffs submit no evidence creating a fact issue as to malice. At most, Plaintiffs allege in conclusory fashion that the defendants were unreasonable

---

[161] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 367 (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984)).

[162] *See Keppard v. AFC Enters., Inc.*, 2000-2474 (La. App. 4 Cir. 11/28/01); 802 So. 2d 959, 965.

[163] *See Danna v. Purgerson*, 760 Fed. App'x 275, 280 (5th Cir. 2019) (unpublished).

in failing to scrutinize text messages and failing to believe Mr. Schambach over Jane Roe.  Absent any evidence supporting the malice element, summary judgment in Defendants' favor is independently warranted.[164]

Having determined that the arresting officers had probable cause to arrest Mr. Schambach, and that there is no evidence in the record indicating that Muller and Fath acted with malice, Defendants are entitled to summary judgment dismissing the Schambachs' claim for malicious prosecution.

## VI. Conclusion

As the Court previously observed, false accusations have a devastating effect on the falsely accused.  But "[t]he constitution does not guarantee that only the guilty will be arrested."[165]  Every "wrongful arrest" case, by definition, involves a situation in which the police have apprehended the wrong person; or, perhaps, a person not guilty of the crime charged; or, perhaps, one as to whom the prosecuting authorities decline to proceed to trial for lack of sufficient evidence to secure a conviction.  The question in a wrongful-arrest civil-rights case is not whether the accused definitively committed a crime, whether the police investigation could have been more complete, or whether all of the evidence now possessed would support the charge.  Probable cause cannot turn on the hindsight determination of whether the putative victim told the truth; rather, it is based on what the police know at the time of the arrest.  And, with all Fourth Amendment inquiries, context is dispositive of the ultimate assessment of reasonableness.  Sexual assault, or he-said/she-said molestation accusations, present difficult probable cause assessments for investigating

---

[164] *See Stokes v. Faber*, 522 F. Supp. 3d 225, 239-40 (E.D. La. 2021)(Zainey, J.).

[165] *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)(citation omitted).

officers faced with conflicting information where, as here, one person is lying, and one is telling the truth.[166]

"Probable cause exists where the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."[167] If conflicting narratives or an alleged victim's credibility issues defeated probable cause, rarely would an arrest be proper in a sexual assault/molestation case. Evidence indicative of some other motivation for the timing or substance of an alleged victim's allegation does not render the alleged victim's account *per se* fictional or fabricated. To be sure, when police officers invoke qualified immunity, the Court must consider whether the officers acted reasonably—they have "ample room for mistaken judgments," for qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[168]

For the foregoing reasons,

---

[166] "Innocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect." *Wesby*, 138 S. Ct. at 592.  Inconsistent accounts are a particularly challenging feature in the sexual assault or abuse context.

[167] *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)(quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

[168] *See Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment[169] is **GRANTED**. The plaintiffs' claims are hereby dismissed with prejudice.[170]

**NEW ORLEANS, LOUISIANA**, this  1st  day of June, 2022.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[169] Rec.Doc. 38.

[170] Insofar as the plaintiffs sued the arresting officers in their *official* capacities, this Court previously granted summary judgment in favor of the City of Mandeville; whether because the official-capacity claims are redundant of the previous claims against the City of Mandeville or simply because the Court previously dismissed such claims, summary judgment is proper and the official-capacity claims are dismissed for the same reasons articulated in the Court's November 3, 2021 Order and Reasons. Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). Because the entity is the real party in interest, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166.